IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                CRIMINAL ACTION NO. 2:21-cr-00065

EVERETT LEE MAYNARD,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *United States' Motion to Exclude Testimony from Defense Expert Thurmon E. Lockhart* (Document 60), the Defendant's *Response to Motion to Exclude* (Document 64), and attached exhibits, as well as video of the incident. For the reasons stated herein, the Court finds that the United States' motion should be granted, and the report and testimony of Professor Lockhart should be excluded.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Defendant, Everett Lee Maynard, was indicted on April 28, 2021, for a single-count Civil Rights Violation pursuant to 18 U.S.C. § 242. The indictment alleges:

> On or about October 16, 2020, at or near Logan, Logan County, West Virginia, and within the Southern District of West Virginia, the defendant, Everett Lee Maynard, while acting under color of law as a Police Officer with the Logan Police Department, physically assaulted arrestee R.W., a person known to the Grand Jury, thereby willfully depriving him of the right, secured and protected by the Constitution and laws of the United States, to be free from

1

>unreasonable seizures, which includes the right to be free from the use of unreasonable force by a law enforcement officer. The offense resulted in bodily injury to R.W.

(Indictment, Document 2.) Trial is currently scheduled to begin November 15, 2021, with jury selection on November 12, 2021.

The United States alleges the Mr. Maynard, then a police officer with the Logan Police Department, physically assaulted R.W. in the Logan Police Station. It intends to introduce video of the incident. The video depicts Mr. Maynard entering a restroom with the victim shortly after extending his middle finger at the security camera, yelling at him, with sounds of an altercation. Mr. Maynard drags R.W. out of the restroom and into view of the security camera and pulls him upright, lifting him from under his arms with both men facing forward. Mr. Maynard, still yelling at the victim, carries him across the room, and the victim's head slams into a doorframe. The victim collapses onto the ground. Mr. Maynard continues to yell for a moment before observing the victim's injuries and instructing a fellow officer to call for an ambulance, stating "I went too fucking far."

The Defendant has indicated that he intends to present evidence, including expert testimony, that he accidentally tripped and did not intend to push the victim into the doorframe. His expert, Professor Thurmon Lockhart, has substantial experience and numerous publications in the field of biomechanical engineering. In his report, Professor Lockhart extracts twenty still images from the approximately six seconds of video that encompass Mr. Maynard's movement with the victim from the floor outside the bathroom to the floor beside the doorframe. He provides a description of each image, noting foot positioning, weight distribution, and other factors that could impact gait and balance. Professor Lockhart also indicates that he spoke with Mr. Maynard

and considered his statements that he fell, that the victim may have caught his foot in a rug, precipitating the fall, and that he had to make turns to reach the door.

In the report, Professor Lockhart opines that "the video images of the incident show significant movement elements that may further exacerbate balance control that may lead to a forward fall accident and, Mr. Maynard was not intending to harm Mr. [W.] by heading the doorframe, rather, Mr. Maynard fell forward and reacted in a similar manner as person falling forwards with a forward carriage load."  (Lockhart Rep. at 13.)  He further states: "In my opinion, Mr. [W's] unstable mass in the anterior direction may have created balance perturbations that needed to be corrected or compensated in order to continue walk without falling."  (*Id.*)  In addition: "In my opinion, due to a significant front load related to carrying Mr. [W.] and resistances, several safety walking was compromised."  (*Id.*)  He explains the mechanisms for the increased risk of falls while carrying a heavy load in front of the body.  The report cites several articles, all except one authored or coauthored by Professor Lockhart.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court explained that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," emphasizing that the standard is flexible.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  In

considering the relevance of evidence, courts are to consider the "fit" or "helpfulness" of the expert testimony to the particulars of the case. *Id.* at 591–92. The Supreme Court further explained that the standard is permissive, given that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596.

The Fourth Circuit summarized the five non-exclusive factors established in *Daubert* to assist courts in "assessing the relevancy and reliability of expert testimony" as follows:

> (1) whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community.

*United States v. Crisp*, 324 F.3d 261, 265–66 (4th Cir. 2003). The Fourth Circuit has urged courts to "be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence," but be cautious of the risk that "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). In addition, testimony that is "within the common knowledge of the jurors" should be excluded, as it "almost by definition, can be of no assistance to a jury." *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993).

## DISCUSSION

The United States argues that Professor Lockhart's report and testimony "should be precluded because it relates to matters within the common knowledge of jurors, relies upon inadmissible hearsay, and does not contain scientific or specialized knowledge in reaching its conclusion." (U.S. Mot. at 6.) It argues that members of the jury will be well aware that "a

4

person's balance is impacted by carrying a heavy object, impacted by not having their arms available to help balance, impacted by making turns, and impacted by tripping." (*Id.* at 7.) It also contends that the report and Professor Lockhart's opinions are not based on scientific research. Although the report cites articles and describes research and scientific principles related to walking, the United States argues that the report does not connect those principles to the facts presented or the conclusions reached in this case. In addition, the United States contends that Professor Lockhart's conclusions and opinions that, for example, Mr. Maynard's balance *may* have been compromised by the victim's weight, are too speculative to meet the reliability standard.

The United States further argues that Professor Lockhart should not be permitted to testify as to self-serving exculpatory statements made by the Defendant and should not be permitted to testify as to the Defendant's intent or state of mind. Finally, the United States argues that the evidence should be excluded under Rule 403 because it has low probative value but presents a high risk of misleading or confusing the jury.

The Defendant cites Professor Lockhart's extensive qualifications in the field of biomechanical engineering, with many publications specifically related to slips and falls. He argues that Professor Lockhart "thoroughly analyzed the video and identified several elements of concern that are commonly known to be causative fall risk factors associated with load carriage and human locomotion." (Def.'s Resp. at 5.) He contends that Dr. Lockhart's opinions, after review of the video and still images, "are based on his experience, scientific knowledge, and research." (*Id.*) He disputes the United States' contention that the opinions are limited to matters within the common knowledge of jurors, arguing that "[h]uman gait and how it affects someone is knowledge that is scientific and over the head of the undersigned counsel and most jurors, unless

5

they are Engineers." (*Id.* at 7.) He argues that the testimony will involve "the biomechanics of human gait, local dynamic stability associated with load carrying, effects on gait dynamic stability, gait analysis to classify external load conditions using linear discriminant analysis, and effects of cognitive and physical loads on local dynamic stability during gait." (*Id.* at 8.)

Professor Lockhart's report does not reflect the specialized scientific analysis argued by the Defendant, and nothing in the filings suggest that such specialized analysis would be helpful in this case. Using scientific language to convey simple concepts risks causing confusion and is unlikely to help the jury. The report contains analysis of the video and still images drawn from the video, with descriptions of those images. Jurors are perfectly capable of viewing the video and images without expert guidance. The report further contains opinions that the weight of carrying R.W., R.W.'s movements, and obstacles, including furniture, turns, and carpet, may have interfered with Mr. Maynard's balance and/or presented a risk of tripping. Those factors will be visible to the jury in the video and images, and it does not require specialized knowledge to understand that carrying a person may interfere with balance.

There is a disconnect in the "fit" of Professor Lockhart's expertise and proposed testimony and the issue presented by this case. Upon review of Professor Lockhart's CV, it is apparent that he has experience studying and testifying regarding physical characteristics and environmental conditions or hazards that create a risk of falls. But the jury in this case does not need a scientific explanation of *why* carrying something heavy might interfere with balance. The question presented will be *whether* Mr. Maynard tripped or deliberately slammed R.W. into the door frame. The jury will determine whether Mr. Maynard acted intentionally based on all the evidence presented, including his actions and words in the video in the moments immediately before and

after R.W. hit the doorframe. An expert opinion that excludes that context to opine that it was an accident based on the existence of potential risk factors for a fall has the potential to be misleading, particularly where the fall risk factors are apparent without specialized knowledge.

Further, as the United States argues, permitting an expert to testify regarding either Mr. Maynard's own exculpatory statements or his state of mind would be wholly inappropriate—and well outside the scope of Professor Lockhart's area of expertise. In short, the opinions expounded in Professor Lockhart's report are either irrelevant complexifications of commonly understood facts (e.g., walking while carrying something heavy and navigating over rugs can cause loss of balance or tripping) or unreliable speculation as to the Defendant's mental state. To the extent any portion of the report or proposed testimony would be admissible under Rule 702, the Court finds that it would be of minimal probative value, and the risk of confusing or misleading the jury substantially outweighs any value under Rule 403.

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *United States' Motion to Exclude Testimony from Defense Expert Thurmon E. Lockhart* (Document 60) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: November 10, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA